LEE, P.J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. On April 21, 2000, Evelyn Graham was driving along Highway 11 North in Picayune, Mississippi. After stopping at a red light at the intersection of Highway 11 North and Bruce Street, Graham proceeded through the intersection, stopped suddenly, and was subsequently rear-ended by another car driven by James Walker. Graham had duct tape covering her right brake light, and Walker testified that Graham’s left brake light failed to illuminate. There was minor damage to both cars.
¶ 2. Upon the advice of the paramedics, Graham went to Crosby Memorial Hospital but did not undergo any tests. Graham was released but returned the next day complaining of a sore neck and back. Over the next two years, Graham, complaining of neck and back pain, sought treatment on different occasions with an orthopaedist, a physical therapist and a chiropractor. Graham claims that she has experienced significant pain since the accident, resulting in her inability to perform her job and engage in physical activities.
¶ 3. Graham brought a negligence action against Walker and a trial was held on August 13, 2003, in the Circuit Court of Pearl River County. The jury returned a verdict finding both parties equally negligent. The jury also declined to award Graham damages. Furthermore, prior to trial, at a hearing on November 27, 2002, the trial judge found that Graham intentionally violated discovery and assessed sanctions against her in the amount of $2,629. Graham now appeals to this Court asserting the following issues: (1) the trial court erred in failing to grant her motion for an additur or for a new trial as the jury’s failure to award damages was the result of bias, passion and prejudice; (2) the trial court erred in failing to grant her motion for a judgment notwithstanding the verdict; and (3) the trial court erred in finding that she committed willful discovery violations and in assessing sanctions against her. Finding no merit to the issues, we affirm.
DISCUSSION
I. DID THE TRIAL COURT ERR IN FAILING TO GRANT GRAHAM’S MOTION FOR AN ADDITUR?
¶ 4. In her first issue on appeal, Graham argues that the trial court erred in failing to grant her motion for an addi-tur or for a new trial as the jury’s failure to award her damages was the result of bias, passion and prejudice. When this Court reviews whether the trial court erred in denying a motion for additur we are limited to an abuse of discretion standard of review. Maddox v. Muirhead, 738 So.2d 742 (¶ 5) (Miss.1999). The focus at the appellate level is whether the trial court abused its discretion in denying the motion for additur, not upon the jury’s action in awarding damages. McNair Transport, Inc. v. Crosby, 375 So.2d 985, 986 (Miss.1979). The burden of proving injury and other damages falls to the party seeking the additur. Id. We must view the evidence in the light most favorable to the party against whom the additur is sought and must give him the benefit of all favorable inferences that may be reasonably drawn therefrom. Id. “Awards set by jury are not merely advisory and generally will not be ‘set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ” Maddox, 738 So.2d at 743 (¶ 5) (citing Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992)). “Additurs represent a judi *560 cial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution.” Id.
¶ 5. Graham argues that she presented overwhelming evidence of her injury and damages. Graham testified that since the accident she has had neck and back pain. Graham also stated that her condition had improved, but only as a result of years of therapy. There was also testimony elicited from Graham and her co-worker, Dawn Bechtel, that Graham was unable to perform certain tasks at work. However, many of Graham’s statements during her testimony directly contradict prior testimony through depositions. Graham claimed that the accident caused her to have high blood pressure, but according to her medical records, Graham had high blood pressure prior to the accident and was prescribed medication. Graham also stated that she did not know why there was duct tape over her right brake light, but, according to her deposition, she was pulled over by a police officer and told to fix- her brake light. Graham then stated that she went to Wal-mart to buy duct tape to put over the light.
¶ 6. Dr. Thomas Purser, an orthopaedist, examined Graham following the accident. Dr. Purser ordered an MRI of Graham’s neck and lower back, which showed a protruding disc consistent with her complaints of pain. Graham was diagnosed as having nerve root compression in the neck and lumbar spine. On cross-examination, Dr. Purser admitted that he failed to take a full history of Graham by not asking if she ever had the type of pain with which she initially presented. Evidently, Graham failed to notify Dr. Purser of a prior car accident where she hurt her neck. Dr. Purser also stated that Graham also suffered from degenerative disc disease, with osteophyte formations on her lumbar spine. According to Dr. Purser, these os-teophyte formations seen on films taken the day after the accident could not have been caused by the accident, but had been there for some time.
¶ 7. Dr.-Ludwick Lohnes, a chiropractor who began treating Graham in May 2002, testified that Graham’s back problems are chronic and will never completely subside. Dr. Lohnes also noted that Graham suffered from degenerative joint disease, along with bone spurs and osteophyte formations. On cross-examination, Dr. Lohnes stated that any osteophyte formations or bone spurs seen on films taken the day after the accident could not have been caused by the accident.
¶ 8. The jury had the opportunity to see the witnesses and weigh their testimony. The trial judge denied Graham’s motion for an additur, clearly failing to find that the jury’s decision to deny damages was contrary to the overwhelming weight of the evidence or influenced by bias, prejudice, or passion. We find the same. This issue is without merit.
II. DID THE TRIAL COURT ERR IN FAILING TO GRANT GRAHAM’S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 9. A motion for a JNOV tests the legal sufficiency of the evidence. Spradlin v. Smith, 494 So.2d 354, 356 (Miss.1986). Where a motion for JNOV has been made, the trial court must consider all of the evidence — not just evidence which supports the non-movant’s case — in the light most favorable to the party opposed to the motion. In addition, the non-movant must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Gen. Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss.1969). If the facts and inferences considered in this manner point so *561 overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury’s verdict allowed to stand. City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss.1988).
¶ 10. From the facts as stated above, it is clear that there was substantial evidence for the jury to find that Graham was not entitled to damages resulting from the car accident. Considering all the evidence in the light most favorable to Walker, we cannot find that Graham’s motion should have been granted. This issue is without merit.
III. DID THE TRIAL COURT ERR IN FINDING THAT GRAHAM HAD COMMITTED DISCOVERY VIOLATIONS AND ASSESSING SANCTIONS AGAINST HER?
¶ 11. In her final issue on appeal, Graham argues that the trial court erred in finding that she committed willful discovery violations and in assessing sanctions against her. Trial courts have broad discretion in assessing sanctions for discovery violations and will not be overturned unless they have abused their discretion. White v. White, 509 So.2d 205, 207 (Miss.1987).
¶ 12. Upon review . of the record, we find that the trial court did not abuse its discretion in assessing discovery violations in the amount of $2,629 against Graham. In her interrogatories and deposition Graham consistently denied any prior injury to her neck and back, specifically stating numerous times that she had never been in any other car accidents. In fact, Graham admitted during trial that she had previously been in another car accident where she sought medical treatment. Graham stated that the accident resulted in high blood pressure, which she claimed she had never experienced. During trial, Graham admitted that she had been prescribed medication prior to the accident to treat her high blood pressure.
¶ 13. Furthermore, Graham claimed that she experienced limited movement in her neck after the accident and could not carry anything over five pounds. However, videotape surveillance of Graham filmed over a few months shows her picking up and carrying small children, bending over to pick things off the ground and walking with full range of motion. It is evident from the record that Graham not only lied in her interrogatories and deposition, but also attempted to inflate the severity and nature of her injury in order to garner sympathy from the jury, a tactic which failed. As the trial court was able to review the record, view the videotape surveillance of Graham and hear Graham’s testimony during the hearing on the motion for discovery violations, we can find no abuse of discretion in the trial court’s decision to assess sanctions against Graham. This issue is without merit.
¶ 14. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.